*The United States*
*vs*
*the N. W. Comp^y*

Evidence of
Cap^t Henry Brovoorts—

The Deponent being Sworn, Says that he was at the Island of Mich^k when the goods were Seized, that the wind was fair to make the traverse from Mich^k to Outardes island, and not too Violent in his opinion to endanger the Safety of the boats. The place where they landed was not the usual place, about half a mile Short of it; it was a very Rockey place, much more So than the usual place. It is very customary for boats to use the usual landing, the harbor is most Secure but it was half a mile out of their direct Course; there was a Swell on the lake occasioned the wind of the preceeding day, but in the opinion of the Deponent not dangerous; they were navigating Schenectady boats—which in the Opinion of the Deponent are better calculated to Stand the Swell than the Common Canadian boats; the Swell was Such as to increase upon them in making the traverse the further they went from the harbour

In the Opinion of the Deponent the Swell was Such as not to endanger the Safety of the boats.

on the 27th September

Question by E. Brush.—was there an old Swell on the lake?
Answer—there was an old Swell occasioned by the wind of the precedent day which was Subsiding fast.

question by M^r Brush—how high was the Swell?
answer—the Swell was about one foot high.

question by M^r Sibley. whether the further the boat went the Swell would have been higher?
Answer—the wind that then blew would have Subsided the old Swell, and increased the new Swell.

Question by E. Brush.— is it your opinion that the Swell would have been more than one foot high over any part of the traverse

Answer—No.

Quest by E. Brush—have you ever seen the time when there was no Swell on the lake?

Answer. I never crossed it without experiencing a Swell in the Calmest weather.

Quest. by S. Sibley—Since you have been commanding a vessell have you ever landed a cargo or any part of a Cargo on the british Shore?

Answer—when I went up last May I landed part of my cargo on board the Tracy, in the channel and the other part on the Starboard Side or the right hand Side of the Channell going up.

Quest. by S. Sibley. did you ever report that fact to any Custom house in Canada, or did you Conceive it necessary?

Answer—I never reported to any Custom house in Canada  I was bound to an american port, and no british port lying in the way; I reported to a Custom house in the United States, a part, to wit one bag of flour, remains Still on the Starboard Shore  I should conceive it unnecessary for me to go to S$^t$ Joseph, if there was a port there, or to return back to Sandwich; because I did not conceive the Starboard Shore to be british shore as the Channel formerly was Several miles on the Starbord of that.

Quest. by S. Sibley. did you land the Goods before you entered into the river S$^t$ Clair, or after?

Answer—I sent them all on Shore in boats before I entered river S$^t$ and a part were landed on the right hand shore

[In the handwriting of Peter Audrain]

Treasury Department
April 9th, 1807

Sir

I enclose the copy of a letter from the Comptroller, by which you will perceive that an appeal from the judgment of the Court of Michigan in the case of the U. States v<sup>s</sup> the North West Company is not thought to be advisable. The goods should therefore be restored.

I am respectfully
Sir
Your obed<sup>t</sup> Serv<sup>t</sup>
ALBERT GALLATIN

George Hoffman Esq<sup>e</sup>
Collector
Michillimackinac

[Sibley Papers, Vol. 24 (932), mss. Burton Historical Collection, Public Library, Detroit]

Treasury Department
Comptrollers Office
April 7th 1807

Sir,

The Attorney General of the United States has had under consideration the record of the judgment of the Supreme Court of the territory of Michigan in the case of the libel, The United States against sundry goods, wares & merchandizes, the property of the Northwest Company, and this morning, he verbally communicated his opinion that the decision of the Court, of the principal question in the libel, that the seizure was premature, is correct; and that therefore an appeal is not advisable. — He added that whenever the incidental points on which the Court gave an opinion, shall hereafter arise, it may then be proper to appeal, in order that the law, as it respects them may be settled.

This appears to me, to be the proper course to be pursued.

I have the honor to be &<sup>c</sup>..
(Signed)   G. Duvall.

Albert Gallatin Esq<sup>r</sup>

[Sibley Papers, Vol. 24 (932), mss. Burton Historical Collection, Public Library, Detroit]